```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
 JAMES JACKSON,

                          Plaintiff,
         -vs-                              No. 1:14-CV-00055 (MAT)
                                           DECISION AND ORDER
 CAROLYN W. COLVIN, ACTING
 COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.
```
___

## I. Introduction

Represented by counsel, James Jackson ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II. Procedural History

The record reveals that in May 2010, plaintiff (d/o/b January 4, 1972) applied for DIB and SSI, alleging disability as of

January 2010.[1] After his applications were denied, plaintiff requested a hearing, which was held before administrative law judge William M. Weir ("the ALJ") on April 2, 2012. The ALJ issued an unfavorable decision on September 10, 2012. The Appeals Council denied review of that decision and this timely action followed.

**III. The ALJ's Decision**

Initially, the ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2010. At step one of the five-step sequential evaluation, see 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from limited range of motion ("ROM") of the left shoulder and limited ROM of the right knee, impairments which he considered severe.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. In considering the paragraph B criteria, see 20 C.F.R. § 404 Subpart P, App. 1 § 12.00, the ALJ found that plaintiff had no restrictions in activities of daily living ("ADLs"), social functioning, and maintaining concentration, persistence, or pace, and no prior episodes of decompensation of

---

[1] At the hearing, plaintiff's counsel requested that a prior application, which was denied December 15, 2009, be reopened. Plaintiff's counsel stated to the ALJ that plaintiff had been unaware of his ability to appeal that denial, as he was unrepresented in the prior claim. The ALJ acknowledged counsel's request but did not rule on it, either at the hearing or in his decision.

extended duration. Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), except that he could not "do overhead reaching, pushing, or pulling with the left arm, and no kneeling." T. 39. At step four, the ALJ found that plaintiff was unable to perform past relevant work. Finally, at step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**IV. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

**A.   Step Two Finding**

Plaintiff contends that the ALJ erred at step two of the five-step analysis by finding plaintiff's depression, back pain, degenerative disc disease, and scoliosis to be nonsevere

impairments, and in failing to provide a proper rationale for so finding.

The ALJ found that plaintiff's "back pain and scoliosis" were nonsevere. In so finding, the ALJ acknowledged a January 2010 MRI which showed a "disc protrusion at L5-S1 compressing the S1 nerve roots, scoliosis, and moderate left foraminal narrowing at L5-S1." T. 38 (referencing T. 367, 427). However, the ALJ found these back-related impairments to be non-severe because consulting state agency physician Dr. Samuel Balderman's "examination showed [plaintiff] had a full [ROM] in the cervical and lumbar spine," "[s]traight leg raise was negative," and "[a] neurological exam was unremarkable." T. 38.

As plaintiff points out, the ALJ did not specifically mention plaintiff's reported pain, nor treatment notes which found limited ROM in plaintiff's back, in his step two finding regarding severity of the back impairments. The record reveals that, in addition to the objective MRI findings noted by the ALJ, plaintiff's treatment notes indicated that he suffered from "severe" back pain, see T. 323, for which he was prescribed narcotic pain medication. See T. 302, 307, 323, 347, 392, 407, 414. He also exhibited decreased ROM in the spine. T. 395, 402, 412. Dr. Tinh Trung Dao, plaintiff's primary care physician, also opined that plaintiff had limitations relating to back pain, including significant sitting and standing restrictions.

After making his step two determination, the ALJ summarized plaintiff's medical record, which included the evidence discussed above, throughout his decision, thus indicating an awareness of the evidence. However, the Court is unable to determine from the ALJ's decision whether he properly considered plaintiff's back impairments, even if non-severe, when reaching an RFC determination and proceeding through the five-step analysis. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]'. . . . when we assess your [RFC]. . . .").

The ALJ also found that plaintiff's "medically determinable impairment of depression [did] not cause more than minimal limitation in [his] ability to perform basic mental work activities and [was] therefore non-severe." T. 38. The ALJ went on to find that plaintiff had no limitations whatsoever in activities of daily living ("ADLs"), social functioning, and maintaining concentration, persistence, or pace. Specifically, regarding ADLs, the ALJ found that plaintiff "said he [could] care for his personal needs and cook," he could "take public transportation," and "testified that his only limitations in housecleaning, laundry, and shopping were due to physical problems." Id. Regarding social functioning, the ALJ found that plaintiff had no limitations because "he [did] not go to church or social functions due to an inability to sit too

5

long, not because of any mental health issues." Id. Regarding concentration, persistence, or pace, the ALJ provided no reasoning for his finding.

As plaintiff points out, the ALJ failed to acknowledge evidence from consulting examining psychologist Dr. Robert Hill, who in November 2009 opined that plaintiff could follow and understand only simple instructions; maintain only "some attention and concentration"; "may have some trouble maintaining a regular schedule due to his substance use"; and "may have some trouble dealing with stress." T. 276. The ALJ's decision completely ignores Dr. Hill's opinion, which is inconsistent with the ALJ's finding that plaintiff had no restrictions at all related to mental functioning.

The ALJ also failed to consider state agency review psychologist Dr. Hillary Tzetzo's opinion, which found that plaintiff suffered from mental impairments including adjustment disorder, depressive disorder, anxiety disorder, and substance abuse disorder. In Dr. Tzetzo's opinion, these impairments would cause more than minimal limitations on plaintiff's functioning. Specifically, she opined that plaintiff had mild restrictions in ADLs; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. Dr. Tzetzo opined that plaintiff could perform only simple work in a low-contact setting. Again, the ALJ's decision completely

6

ignores this opinion. This is significant because Dr. Tzetzo, who did not examine plaintiff but simply reviewed his medical record, nevertheless concluded that plaintiff suffered from these various limitations resulting from mental impairments.

At step two of the sequential evaluation, the ALJ is required to follow the "special technique" set forth in 20 C.F.R. §§ 404.5120a, 416.920a. The ALJ must consider whether the plaintiff has a medically determinable mental impairment, and if so, rate the degree of functional limitation associated with that impairment in terms of the four domains of functioning (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). Here, although the ALJ purported to follow this analysis, his decision fails to account for substantial evidence in the record, both from plaintiff's treatment records and consulting state agency sources, which indicated that his depression was severe. Importantly, the ALJ's opinion fails to consider this evidence throughout the remainder of the five-step sequential evaluation.

In addition to the consulting opinions discussed above, plaintiff's treatment record indicates that mental impairments caused more than minimal limitations in his functioning. Although predating the relevant time period, in August 2008 plaintiff was hospitalized for four days in association with depressive symptoms. Dr. Hong Yu, who treated plaintiff at Erie County Medical Center

("ECMC"), noted that plaintiff "overdosed on Ambien and alcohol in order to drive away depression instead of a suicide attempt." T. 355. Plaintiff reported "want[ing] to drink more and more . . . to drive away his depression." Id. In June 2011, plaintiff was hospitalized after overdosing on Tramadol, a narcotic pain medication, which resulted in a seizure. In a February 2012 RFC questionnaire, plaintiff's primary care physician Dr. Dao noted that plaintiff suffered from depression and anxiety, and opined that he was capable of only low stress jobs.

The ALJ's failure to reference consideration of the bulk of the above-discussed evidence at step two indicates to the Court that he failed to properly consider plaintiff's mental impairments in compliance with the special technique. It is significant that both consulting psychologists as well as plaintiff's treating physician noted that plaintiff had difficulty dealing with stress; however, the RFC finding contains no limitation to address such a limitation.[2] The RFC finding, which contained *no limitations whatsoever* related to mental functioning, as well as the ALJ's failure to cite much of the evidence relevant to plaintiff's mental impairments, indicates that the ALJ did not consider the impact of

---

[2] "Because stress is highly individualized, mentally impaired individuals may have difficulty meeting the requirements of even so-called low-stress jobs, and the *Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work*." Stadler v. Barnhart, 464 F. Supp. 2d 183, 189 (W.D.N.Y. 2006) (internal quotation marks omitted) (emphasis added) (citing SSR 85-15).

8

plaintiff's mental impairments throughout the five-step sequential evaluation. As a result, this case must be remanded for proper consideration of the severity of plaintiff's mental impairments. See O'Connell v. Astrue, 2009 WL 606155, *22 (N.D.N.Y. Mar. 9, 2009) (finding that step two error was not harmless "because it [was] not clear that the ALJ adequately considered all the evidence relevant to the issue, nor [was] it clear that the ALJ applied the special technique in formulating his . . . decision").

On remand, the ALJ is directed to consider all of the relevant evidence when making the step two determination as to which of plaintiff's impairments have more than a minimal effect on his functioning, and are therefore severe under the regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. The ALJ must state the evidence he considers in this regard, and explain his reasoning so that meaningful review is possible. The Court notes that on remand, the ALJ must consider all of plaintiff's impairments, both severe and non-severe, when reaching an RFC determination. See 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

**B.   RFC Finding**

Plaintiff contends that the ALJ's RFC finding was unsupported by substantial evidence, arguing primarily that the ALJ erred in completely ignoring the only psychological evaluations in the record, which came from consulting examining psychologist Dr. Hill and reviewing psychologist Dr. Tzetzo.

For the reasons discussed above, the ALJ's step two finding that plaintiff's mental impairments were non-severe, combined with his failure to consider either of the relevant consulting psychological opinions in his decision, support the conclusion that the ALJ failed to properly consider plaintiff's mental impairments, whether severe or non-severe, throughout the entire five-step sequential evaluation. As a result, the ALJ's RFC finding was not supported by substantial evidence. See, e.g., Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) (noting that ALJ's step two finding that depression was non-severe was unsupported by substantial evidence, thus resulting in an RFC finding similarly unsupported by substantial evidence). Further, because there was no treating physician's opinion detailing plaintiff's mental limitations, the ALJ was required to discuss and weigh the opinions of the consulting state agency psychologists in reaching a mental RFC finding. See Duell v. Astrue, 2010 WL 87298, *5 (N.D.N.Y. Jan. 5, 2010) ("The regulations further require an ALJ to 'explain in the decision the weight given to the opinions of a State agency medical or psychological consultant,' *unless the ALJ has given controlling weight to the opinions of a treating source*.") (emphasis added).

The ALJ also failed to discuss a November 2009 consulting examining opinion from Dr. Balderman, which found "minimal limitations in changes of position of the head [and] use of the

hands for fine or gross motor work." T. 269-70. Although the ALJ did discuss Dr. Balderman's November 2010 opinion, the ALJ's failure to consider his earlier opinion was error. See <u>Duell</u>, 2010 WL 87298, at *5 ("[T]he regulations clearly require an ALJ to 'evaluate every medical opinion.'"); see 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

On remand, the ALJ must fully consider every medical source opinion in the record, including those from the consulting sources, in determining plaintiff's claim. If the ALJ does not give controlling weight to a treating source's opinion, he must state the weight given to the consulting opinions. See <u>Duell</u>, 2010 WL 87298, at *5.

### C. Failure to Re-Contact Treating Physician

Plaintiff contends that the ALJ erred in failing to re-contact his treating physician, Dr. Dao, to reconcile inconsistencies in Dr. Dao's three opinions. In discussing the weight given to these opinions, the ALJ simply stated that "[l]ittle weight [was] given to the opinions of Dr. Dao, as the doctor gave inconsistent opinions each time." T. 43. The ALJ provided no further rationale for rejecting all three of Dr. Dao's treating physician opinions. As discussed below, the Court finds that the ALJ failed to properly apply the treating physician rule to Dr. Dao's opinions, and erred

in failing to re-contact Dr. Dao to resolve inconsistencies within his opinions.

Dr. Dao's first opinion was issued May 2011. Dr. Dao opined that plaintiff suffered from knee pain, back pain and spasms, left shoulder pain, neck pain, and hypertension. In Dr. Dao's opinion, plaintiff would be moderately limited in walking, standing, sitting, and using his hands. According to Dr. Dao, plaintiff could not sit, and, or walk for more than two hours. In February 2012, Dr. Dao issued another opinion, in which he opined that plaintiff could sit for only two hours at a time, stand for one hour at a time, would need to alternate periods of walking every 20 to 60 minutes in an eight-hour workday, and would need to shift positions throughout the workday. According to Dr. Dao, plaintiff would need to elevate his legs 30 to 70 percent of an eight-hour workday. In April 2012, Dr. Dao issued a third opinion, in which he stated that he was "unable to determine" whether plaintiff was a malingerer. T. 602. Contrary to his earlier opinion, Dr. Dao opined that plaintiff would *not* need to shift positions during an eight-hour workday, and would not need to elevate his legs. In the April 2012 opinion, Dr. Dao repeatedly indicated that plaintiff was "referred to physical functional capacity testing," and refused to provide a detailed assessment of his physical functioning. T. 602-03.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Where a treating physician's opinion contains inconsistencies, such that a plaintiff's functional capacity cannot be determined, the ALJ has a duty to re-contact the treating physician for clarification. See, e.g. Khan v. Comm'r of Soc. Sec., 2015 WL 5774828, *14 (E.D.N.Y. Sept. 30, 2015)("Even where an ALJ has made the required initial and follow-up requests, in certain circumstances, the ALJ may be required to re-contact a treating source in order to fulfill the ALJ's duty to develop the record.") (citing Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 505 (S.D.N.Y.2014) (remanding and directing the ALJ to re-contact the plaintiff's treating physician "to obtain clarification regarding the purportedly inconsistent findings").

Here, as the ALJ recognized, Dr. Dao's three opinions contained inconsistencies. Further, it is unclear whether any further "physical functional capacity testing," subsequent to his third opinion, occurred which would allow Dr. Dao to provide a more specific functional assessment. See T. 602-03. Although the contents of Dr. Dao's latest submission suggest that his opinion of plaintiff's functional capacity had changed, he nevertheless failed to identify specific functional capacities regarding sitting,

standing, walking, and lifting which could provide substantial evidence for the ALJ's RFC finding.

Because Dr. Dao's latest opinion provided little valuable information regarding plaintiff's functional capacities, "[a]t a minimum, the ALJ likely should have contacted [Dr. Dao] and sought clarification of his report." Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (per curiam) (noting that physician's vague report "[did] not provide substantial evidence to support the ALJ's finding"); see also Rolon, 994 F. Supp. 2d at 505 ("Even under the current amended regulations, which give an ALJ more discretion to 'determine the best way to resolve the inconsistency or insufficiency' based on the facts of the case, the first option is still to recontact the treating physician.").

Moreover, the ALJ failed to apply the correct legal principles when he rejected Dr. Dao's three opinions. The regulations provide that when a treating source's opinion is rejected, the ALJ must consider various factors including (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; and (iv) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c), 416.927(c). The ALJ here did not consider these factors. Instead, he simply stated that he gave *all* of Dr. Dao's opinions little weight for the sole reason that they were

inconsistent with each other. This reasoning, by itself, was insufficient to reject the opinions of a treating physician.

"Consistency is [only one] factor in deciding the weight accorded to any medical opinion." Michels v. Astrue, 297 F. App'x 74, 76 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(4)). Here, as discussed above, the ALJ failed to apply any of the other factors in determining what weight to accord Dr. Dao's three opinions, all of which were required to be analyzed according to the treating physician rule. Moreover, although "slavish recitation of each and every factor [is not required] *where the ALJ's reasoning and adherence to the regulation are clear*," here, it is not clear that the ALJ applied the substance of the treating physician rule, as he was required to do. Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (emphasis added).

Therefore, this case is remanded for a proper consideration of Dr. Dao's opinions according to the treating physician rule. On remand, the ALJ is directed to re-contact Dr. Dao in order to clarify the inconsistencies in his three opinions. If the ALJ chooses to reject one or more of Dr. Dao's opinions, he must do so by giving consideration to the critical factors as provided in the regulations. See 20 C.F.R. § 404.1527(c), 416.927(c).

### D. Prior Application

As noted above, at his hearing, plaintiff's counsel requested that the ALJ reopen a prior application, which had been denied

December 15, 2009. That request appears to have been made within 12 months of the prior application's initial determination, and assuming that it was, the request should have been granted. See 20 C.F.R. §§ 404.988(a), 416.1488(a) (providing that a previously denied claim may be reopened "[w]ithin 12 months of the date of the notice of the initial determination, *for any reason*") (emphasis added). However, the ALJ never ruled on the request. On remand, the ALJ is directed to consider and rule on the request.

**V. Conclusion**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Doc. 14) is denied and plaintiff's motion (Doc. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:   April 20, 2016
        Rochester, New York.